LOTTINGER, Judge.
The defendant herein, Fidelity & Casualty Company of New York, on January 1, 1960, and again in January of 1961 executed a surety bond, pursuant to Louisiana Revised Statutes 37:1447, and conditioned as therein required, in connection with the application of one Roy Roshto, d/b/a Roy Roshto Real Estate, to the State of Louisiana for a license as a Real Estate agent or broker.
On February 26, 1960, the plaintiffs herein entered into a written listing agreement with the said Roy Roshto, d/b/a Roy Roshto Real Estate, granting to the said Roshto an exclusive right as Real Estate Agent to sell their property in East Baton Rouge Parish for the sum of $9,500.00. The term of this listing agreement was originally 180 days, and it was subsequently extended for an additional 180 day period at the end of the original period set forth in the agreement. Some time in November or December of 1960, after having found that the plaintiffs were in arrears on the mortgage payments on their property, Roshto offered to buy the property from them for the sum of $6,260.85, after having represented to them that he had been doing everything within his power to find a purchaser for the property at the listed price, but that he had been unsuccessful. Based upon the representations of Roshto, the petitioners consented to sell the property to him for the offered price of $6,260.85. It is stipulated by and between both parties that at the time he offered to buy the property from the petitioners, Roshto, while still the petitioners’ agent, had received from a third party, an offer to buy this identical property for a price in excess of the $6,260.85 price offered by Roshto to the petitioners. Roshto had failed to communicate this offer to the petitioners, and based on his representations to them that he had not received any offers to buy the property, and in ignorance of the fact that he had received an offer to buy the property which was in excess of the $6,-260.85 price, Miles and his wife did, on January 23, 1961, transfer the property to Rosh-to for the quoted consideration of $6,-260.85. On the same date that he acquired the property from Miles and his wife, Rosh-to sold the property to a third party for the sum of $10,000.00.
Thereafter, Miles and his wife instituted a civil suit against Roshto in the Parish of East Baton Rouge and on April 1, 1962, obtained a judgment against Roshto in the full *615 sum of $3,739.15, the difference between the price for which they sold their property to Roshto, and the price which he received for it, plus legal interest from June 16, 1961, the date of judicial demand, and for all costs of the proceeding, which amounted to $57.25. On May 3, 1962, amicable demand was made by Miles and his wife on the defendant herein to pay the amount of the judgment, and a certified copy of the judgment was served upon them on the same day. On several occasions after this demand for payment and notice of judgment was made and served upon the appellant, it paid to several other claimants a collective principal sum of $9,-433.66 and interest aggregating $98.48, and $167.50 in court costs, all as a result of claims made against it by reason of the fraudulent conduct of Roy Roshto in matters unconnected with this particular transaction.
The defendant, in addition to the principal, interest and court costs paid as aforesaid, also paid out attorney fees to its attorney in connection with the defenses of the lawsuits instituted in connection with these other claims, which when added to the amount of principal and court costs paid, amounted to the gross sum of $10,199.64 paid out by appellant under the terms of the bond.
The instant suit was filed March 18, 1963 by plaintiffs and they prayed for judgment against the defendant in the full amount of their judgment against Roshto in the prior suit, all costs of this suit and for 10 per cent attorney fees as provided for by R.S. 9:-3902.
Based upon the fact that their bond was in the amount of $10,000.00, the appellants urged as a matter of defense that their total aggregate liability under the terms of the bond was $10,000.00 and that they had previously paid out a sum in excess of that figure, and that they therefore could not be made to pay this claim, having exhausted the limits of their stated obligation under the bond.
At the time of the trial, the entire matter was submitted to the Court on a joint stipulation entered into between counsel for plaintiffs and defendant. By judgment rendered May 6, 1965 and read and signed May 20, 1965, the Trial Judge rendered judgment in favor of the plaintiffs and against the defendant in the amount of $3,739.15, plus the sum of $57.25 for court costs incurred in proceeding No. 82587 of the Nineteenth Judicial District Court, all with legal interest from date of judicial demand, plus all such additional costs as were incurred in the instant proceeding. He further granted the plaintiffs judgment against the defendant in the sum of $373.91, representing ten per cent of $3739.15 as attorney fees, in accordance with R.S. 9:3902. It is from this judgment that the defendant-appellant has perfected this suspensive appeal.
As stated above, the entire record in this proceeding consists of the pleadings, the joint stipulation of counsel for both parties, and the exhibits filed in connection therewith, as well as the Trial Judge’s judgment and written reasons assigned therefor.
In his written reasons for judgment, the Trial Judge reviewed the facts as related hereinabove and stated in part:
“A real estate broker’s permit and his bond required by law are in force for one year. The broker must make a new application and give a new bond each year to continue in business. Two years are here referred to: the first year commenced January 1, 1960, and ended December 31, 1960, and the next year commenced January 1, 1961 and ended December 31, 1961. The two bonds are in evidence. They are exactly alike.”
“The fraud committed by the broker commenced in November, 1960, and was con-sumated on January 23, 1961, by the transfer of property. Due to the conclusion reached by this Court, it is not necessary to determine whether the instant obligation falls under the 1960 or the 1961 bond or both. And it is not necessary to con *616 sider how mucli or when defendant paid in settlement of the other judgment.”
■“The law says that this bond shall be for ‘the benefit of any person in interest, as his interest may appear.’ The bond itself says it is conditioned according to law.”
“The plain intent and language of the law are that each dishonest and fraudulant act of the broker causing damage to any person will entitle that person to be paid the amount of the damage up to $10,-000.00. If the broker, while the bond is in force, commits other disconnected dishonest transactions causing damage to some other person, that other person will have the same protection * * * ”
“The situation here presented is analogous to a public liability automobile insurance policy. For example, if the amount of insurance coverage is $5,-000.00 and $10,000.00. That means a protection of not over $5,000.00 to any one person and not over $10,000.00 to all persons damaged in any one accident. If, say more than one person is injured in one accident and the extent of their combined damages amounts to more than $10,-000.00 the total liability of the insurer will be $10,000.00, but no one person can recover more than $5,000.00. The same insured then has another accident by his negligence, or any number of other accidents, while the policy is in force. Those injured in the other accidents will have the same protection. The payment of damages to claimants in one accident does not reduce the protection of other claimants in other accidents as long as the policy is in force. The same principle should apply in this case now under consideration. It is contended by counsel for both parties that the question here presented is res nova in Louisiana.”
The appellant urges but one specification of error and that is that the Trial Judge erred in holding that the penalty of bond furnished pursuant to R.S. 37:1447 is available to each individual bond claimant rather than representing the aggregate limit of the surety’s liability.
Both counsel concede that this question is res nova in Louisiana.
Chapter 17 of Title 37 of the Revised Statutes of 1960, wherein Section 1447 is contained, regulates the occupation of real estate and business brokers. It provides for licensing a real estate agent and prescribes various qualifications and requirements which the applicants must meet both to secure and retain their license. One of the licensing requirements is that every applicant must furnish a bond. R.S. 37:1447 describes the nature and purpose of the bond thusly :
“A. Before any person opens, engages in, manages or conducts any real estate agency or office, or deals in real estate or rent collecting, as agent or broker, either in an office or otherwise, such persons shall furnish bond with security in favor of the governor in the amount of one hundred dollars for every thousand population or fraction thereof in the parish in which the agent or broker proposes to do business. The bond shall not exceed ten thousand dollars for the benefit of any person in interest, as his interest may appear, and shall be conditioned that the agent or broker shall carry out the objects and purposes for which his agency, office or business has been established, and that the agent or broker shall honestly conduct his business and pay all damages which may result from his actions as a real estate agent or broker; provided, however, that all nonresident brokers shall furnish the ten thousand dollar maximum bond. The surety, if a personal surety, shall be a citizen of this state and shall own immovable property in the parish in which the agent or broker resides or is domiciled to the full and unencumbered value equal to the bond he may sign. The surety may be sued either in the parish of his domicile or in the parish in which *617 the agent or broker resides or is domiciled.
“B. Anyone who is injured or damaged by the agent or broker by any wrongful act done in the furtherance of such business or by any fraud or misrepresentation by the agent or broker may sue for the recovery of the damage before any court of competent jurisdiction. As amended Acts 1962, No. 89, § 1.”
The Trial Judge singled out the phrase “the bond shall not exceed ten thousand dollars for the benefit of any person in interest”, and in effect held that the word “any” in this phrase means “each” and that therefore each bond claimant is entitled to recover against the surety for the full amount of his claim up to $10,000.00.
Counsel for appellant has cited to us many cases from other jurisdictions, among them being Brown v. National Surety Corporation, 207 S.C. 462, 36 S.E.2d 588, a 1946 decision of the Supreme Court of South Carolina in which the Court said:
“The great weight of authority * * * sustains the proposition that where several persons have causes of action on a public or official bond, they may not together recover more than the penalty of the bond, although the aggregate judgments may exceed the penalty.”
Counsel also states that Brown v. National Surety Corporation represents the majority view on this question among the courts of the United States. In support of his position, he cites the cases of Leggett v. Humphreys, 21 How. 66, 16 L.Ed. 50, Bradford v. National Surety Company, 207 Ala. 549, 93 So. 473, Witter v. Massachusetts Bonding & Insurance Company, 215 Iowa 1322, 247 N.W. 831, 89 A.L.R. 1065.
We note the case of Pennsylvania Fire Insurance Company v. American Airlines, Inc., 180 F.Supp. 239 (D.C.1960) which involved a case under the provisions of Title 40, § 270a et seq., United States Code Annotated, known as the Miller Act. In this instance, the plaintiff, as surety, furnished a performance and payment bond in favor of the government as required by that act in the amount of $70,070.00. There were certain subcontractors and suppliers whose claims aggregated $164,286.70. The contention was made that the plaintiff was liable to each unpaid supplier to the extent of the full amount of the bond, and not, as the plaintiff asserts, on a pro rata basis. The defendant contended that the complaint should be dismissed because the plaintiff surety was liable under the Miller Act to each supplier of labor and materials for payment in full of each claim up to the face amount of the bond. The defendant relied upon certain phrases used in 40 U.S.C.A. §§ 270a (a) (2), and 270b which sections provide, among other things, that a prime contractor must furnish a payment bond for the protection of the suppliers in the prosecution of the work “for the use of each such person” and “every person” who has furnished such labor or materials and that every person shall have the right to sue on the bond and that every suit shall be brought in the name of the United States “for the use of the person suing”. In its opinion, the Court said:
“It is fundamental and long settled that a surety’s obligation is limited to the face amount of the bond. The principle has been succinctly expressed in Bill Curphy Co. v. Elliott, 5 Cir., 1953, 207 F.2d 103, where liability under a Miller Act bond was restricted to the face amount of the bond although the judgment against the principal was more than twice that sum. There the Court said (at page 106) : ‘If appellant’s contention that the surety’s liability may exceed the sum stated on the face of the bond is correct, and it is not, it would be futile to state any amount of liability in the bond. This contention completely overlooks the well-established rule in Texas and elsewhere that the sole object of stating the penalty in a bond is to fix the limit of the liability of the signers, and no recovery can be had on *618 such bond against the principal or surety beyond the penalty named in the bond.’ To the same effect is Massachusetts Bonding & Insurance Co. v. United States Government, 9 Cir., 1938, 97 F.2d 879, and Houston Fire & Casualty Insurance Co. v. E. E. Cloer General Contractor, Inc., 5 Cir., 1954, 217 F.2d 906.”
We believe that the language quoted in the above case correctly summarizes the majority view adopted toward this question by the other jurisdictions in the United States. We also believe this construction of a surety’s liability under the terms of a ¶ bond to be the most reasonable and proper. We do not believe that it was the intent of the Legislature that a surety, either corporate or personal on an occupational bond should not be permitted to limit its liability to the amount of bond required by the Statute. R.S. 37:1447 provides that the surety, if a personal surety, shall be a citizen of Louisiana and shall own immovable property in the Parish in which the agent or broker resides or is domiciled, and that said immovable property shall be equal, in full and in unencumbered value, to the bond that the surety may sign. This certainly is an indication of the legislative intent with reference to the surety’s liability under the statute. If we were to construe the statute as is urged by appellee, to the effect that the surety is liable to each individual claimant up to the full amount of the bond, then this requirement as to the amount of unencumbered value of immovable property belonging to a personal surety would be of no benefit whatsoever to any third person, as one claimant could, quite easily, take the entire amount of the bond from the surety and thus leave innumerable other claimants with no remedy whatsoever against the surety.
Accordingly, based on the majority view which prevails throughout the United States, and in particular our interpretation of the Legislative intent of R.S. 37:1447, we hold that the surety’s liability under the terms of a bond executed in connection with that statute represents the aggregate limit of the surety’s liability thereunder.
With reference to this particular case, however, we find that the defendant herein, as aforesaid, after having received on May 3, 1962, formal notice of the rendition of the judgment in favor of Miles and his wife against Roshto, and after having received on the same date an amicable demand by Miles and his wife to pay the amount of the judgment, then proceeded to pay to other claimants against them as surety a collective principal amount of $9,433.66, plus other interest and court costs, as well as certain attorney fees to their own attorneys. While we have held that the penalty of a bond furnished pursuant to R.S. 37 :- 1447 represents the aggregate limits of the surety’s liability, we do not feel that that rule applies in this particular instance. The defendant had full notice of plaintiffs’ judgment, and, after having received said notice, proceeded to pay more than 94 per cent of the total amount of the bond to other claimants, having paid nothing to plaintiffs in the process.
Clearly, in this instance, the defendant had available to it a most simple remedy, that of the institution of a concursus proceeding (R.S. 13:4811 et seq.) in which all of the claimants under the terms of the bond could have been impleaded, and the full amount of the bond deposited at the time of the filing of the suit. This would have permitted a just and proper distribution of the proceeds of the bond to all of the claimants thereunder by a District Court and would not have resulted in the inequitable situation which now exists in the form of the plaintiffs, alone among the claimants against the bond who have obtained judgment, having not been paid. The defendants, having elected to pay other claimants directly, after having received notice of the judgment rendered in favor of the plaintiffs, did so at their peril, and we now hold that the plaintiffs herein are entitled to obtain judgment against the defendant for their proportionate share of the *619 $10,000.00 bond, that is, in the full sum of $2,838.53, plus legal interest on said amount from June 16, 1961, the date of judicial demand in the plaintiffs’ suit against Roshto, and for all costs of that proceeding, amounting to $57.25, as well as for all costs of the instant suit and this appeal.
The attorney fees granted by the Lower Court is disallowed because the full amount claimed has not been recovered. R.S. 9:3902.
Accordingly, the judgment of the Lower Court is amended and as amended is affirmed.
Judgment amended and affirmed.