NORTH RIVER INSURANCE COMPANY, Respondent v. Leslie A. CLAAR, Lucian W. Pinckney, First Citizens Bank, Three Oaks Landscape Nursery, Inc., Edward G. Harrison, III, Mary T. Harrison, J.R.H., Inc. and G.S., Inc. d/b/a Autos of Charleston, Charleston's Import Showplace, Harry Davis, Larry Bryan Kile, Transouth Financial Services, Soloman Frazier, Ford Motor Credit, Ernest Guzman, Clay Cunningham, B. Lynne Bost, Henry J. Miro, South Carolina National Bank, First Union National Bank of South Carolina, Paul Ritoch, Walter S. Beckman, John Meredith, Julia Conyers, S & H Auto Sales, Richard Guerrieri, John Guerrieri, Joseph H. Bokern, Rita Bokern, Gail Banks, Catherine J. Zeigler, Lewis R. Chitwood, Horace J. Canady, Bishop Thaddeus Stoney, Paul Ferry, April Hittle, Melvin Barr, Bankers Trust of South Carolina now known as NCNB, Defendants, of whom Paul Ritoch, is Appellant.

Appeal of Paul RITOCH.

(382 S. E. (2d) 8)

Court of Appeals

*Fred Thompson, III,* of *Scardato & Thompson,* Charleston, *for appellant.*·

*Frank S. Potts,* of *Lewis, Lewis, Bruce & Potts,* Columbia, *for respondent.*

Argued May 16, 1989.

Decided June 26, 19898.

GARDNER, Judge:

North River Insurance Company (the Company) issued a motor vehicle and wholesale surety bond to Mike Murray Auto Brokers, Inc., (Murray) pursuant to the requirements of Section 56-15-320, Code of Laws of South Carolina (1976, as amended). The Company brought this declaratory judgment action against a number of defendants to determine the amount of its liability under the bond. The appealed order granted summary judgment to the Company. Only one defendant, Paul Ritoch, appeals. We affirm.

## ISSUE
The issue presented by this appeal is whether the language of the surety bond means that the Company's maximum liability under the bond is $15,000 for all claims of all persons.

## FACTS
After the issuance of the policy to Murray, ·numerous claims for fraud and deceit were brought against him. Ritoch obtained a judgment against Murray for $24,355.52.

The Company tendered $15,000 to the Charleston Clerk of Court when it brought the present action and sought to interplead 38 defendants who made claims against the surety bond. The Company claims it is only liable for a total of $15,000 for all claims against the bond.

In support of its motion for summary judgment, the Company offered the deposition of William Todd, an Assistant Chief Counsel for the South Carolina Department of High-

ways and Public Transportation. Todd stated that he was actively involved in drafting the legislation requiring motor vehicle dealers to obtain a motor vehicle dealer surety bond. He further stated that the $15,000 amount specified in the statute was intended to be a "maximum of $15,000 per dealer ... to include all claims against the dealer."

The legislation which Todd assisted in drafting was passed intact by the legislature.

Todd also helped draft the standard form for the motor vehicle dealer and wholesale surety form; this form was sured in the drafting of the bond before us.

Section 56-15-320(2), Code of Laws of South Carolina (1976, as amended) provides:

> Each applicant for licensure as a dealer or wholesaler must furnish a surety bond *in the penal amount of fifteen thousand dollars* on a form to be prescribed by the director of the Motor Vehicle Division of the Department. The bond must be given to the Department and executed by the applicant, as principal, and by a corporate surety company authorized to do business in this State, as surety. The bond must be conditioned upon the applicant or licensee complying with the provisions of the statutes applicable to the license and as indemnification for any loss or damage suffered by an owner of a motor vehicle, or his legal representative, by reason of any fraud practiced or fraudulent representation made in connection with the sale or transfer of a motor vehicle by a licensed dealer or wholesaler or the dealer's or wholesaler's agent acting for the dealer or wholesaler or within the scope of employment of the agent or any loss or damage suffered by reason of the violation by the dealer or wholesaler or his agent, of any of the provisions of this chapter. An owner or his legal representative, who suffers the loss or damage has a right of action against the dealer or wholesaler and against the dealer's or wholesaler's surety upon the bond and may recover damages as provided in this chapter. A new bond or a proper continuation certificate must be delivered to the Department annually before the license is renewed. *However, regardless of the number of years a bond remains in effect, the aggregate*

*liability of the surety for any and all claims is limited to fifteen thousand dollars on each bond and to the amount of the actual loss incurred.* The surety has the right to terminate its liability under the bond by giving the Department thirty days' written notice of its intent to cancel the bond. The cancellation does not affect any liability incurred or accrued prior to the cancellation. [Emphasis added.]

The pertinent language of the surety bond itself reads as follows:

[The surety is obligated] to indemnify any owner of a motor vehicle ... who may be aggrieved by any fraud, fraudulent representation or violation by said Principal ... in the amount of Fifteen Thousand Dollars ($15,000.00) ... *provided that the aggregate liability of the surety under this bond for any and all claims is limited to Fifteen Thousand Dollars ($15,000.00) or to the amount of the actual loss incurred, whichever is less.* [Emphasis added.]

## DISCUSSION

Ritoch argues that the language of the statute should be interpreted to require $15,000 coverage for each claimant under the bond because the language refers to "an owner" of a motor vehicle in the singular and not to "owners." He also argues that the terms "aggregate liability" refer to multiple claims by one claimant, not multiple claimants. Ritoch contends that any ambiguity in the statute must be construed against the surety and in favor of the consumer seeking protection under the statute.

Ritoch further argues that the language of the bond itself is ineffective to limit the statutory liability because terms which are required by statute are incorporated by law and to the surety bond. He cites for this proposition of law *Nationwide Mutual Insurance Co. v. Howard,* 288 S. C. 5, 339 S. E. (2d) 501, 504 (1985) wherein it is held that "pertinent provisions of the uninsured motorist statutes which are absent from the policy language prevail as much as if expressly incorporated in the policy." The company concedes that the bond, being a statutory bond,

should be construed in light of the statute creating the obligation and the purposes for which the bond is required as stated in the statute.

We reject the above arguments for several reasons. First, the statute provides that the bond shall be in the "penal" amount of $15,000. Our Supreme Court in the case of *Brown v. National Surety Corporation*, 207 S. C. 462, 36 S. E. (2d) 588, 589-590 (1946) reviewed extensive authority relating to the definition of the words "penal sum." Therein the court quotes the following authority:

> The general rule is well settled that the liability of surety is limited to the amount, or the penal sum, stated in the bond.
>
> At 11 C. J. S., Bonds, Section 57, p. 432, it is said:
>
> "The object of a penalty in a bond is to limit the obligation of the signers, and in the absence of a condition extending his liability a surety cannot be held liable for more than the penal sum named. Also, the liability of a surety on a statutory bond cannot be enlarged by implication beyond its terms and its statutory office."
>
> In American Jurisprudence, Vol. 43, Section 415, under the title of Public Officers, it is stated:
>
> "Unless otherwise provided, and subject to an exception as respects interest, the liability of sureties on an official bond is limited by the penalty of the bond, and if the penalty is larger than required by statute, the liability, it has been held, should be limited to the amount required by law."

\* \* \* \* \* \*

The case of *Mitchell v. Laurens*, 41 S. C. L. 109, 7 Rich. 109, involved an action on the official bond of a master in chancery. It was held that the several creditors could recover the amount of the penalty of the bond, and that if the damages and judgments in their suits exceeded the penalty, they must take ratably.

\* \* \* \* \* \*

The Supreme Court stated in the case of *Ellis v. Sanders*, 34 S. C. 236, 13 S. E. 417 (1891), that judgment may

be recovered on a bond according to its terms in an amount not exceeding the penalty.

The great weight of authority from the other states of the Union sustains the proposition that where several persons have causes of action on a public or official bond, they may not together recover more than the penalty of the bond, although the aggregate of the judgments may exceed the penalty. [Citations omitted.]

*Brown* remains the law of this state. It was the law of the state when Section 56-15-320(2) was enacted in 1983 and became effective in 1984. The meaning of the words "in the penal amount of $15,000 . . ." is clearly defined by *Brown.* The meaning is that the liability of the Company is limited to a maximum of $15,000 for all claims, regardless of how many, of all persons. And we so hold.

Second, the meaning of the words of the statute is clear: "[T]he aggregate liability of the surety for any and all claims is limited to $15,000 on each bond and to the amount of the actual loss incurred." These words limit the recovery for any and all claims to a maximum of $15,000. We summarily reject Ritoch's claim that these words refer to multiple claims by one claimant and not to multiple claimants. This contention is untenable. And we so hold.

Third, we hold that the use of the words "an owner" in the body of the statute does not create an ambiguity. By the use of the words "penal sum" and "the aggregate liability of the surety," the legislature manifested a clear intent that the surety company's maximum liability under the bond would be limited to $15,000 for all claims of all persons. And we so hold. In so holding we fulfill the primary function of courts in interpreting statutes, i.e., to ascertain the intent of the legislature. *Multi-Cinema, Ltd. v. South Carolina Tax Commission,* 292 S. C. 411, 357 S. E. (2d) 6 (1987).

And, we summarily reject Ritoch's contention that because of the form of the judgment below, he is precluded from arguing that there exists no material issue of fact. The only issue decided by the court was one of law relating to the meaning of the statute and the bond; it was not necessary for the trial court to make findings of fact. And we so hold.

## CONCLUSION

Because of the meaning of the words of the statute providing for a penal sum and limiting the aggregate liability of the surety for any and all claims, we hold that there was no error on the part of the trial judge in granting summary judgment. The appealed order is therefore affirmed.

Affirmed.

CURETON and GOOLSBY, JJ., concur.