414 F.2d 415
 LUMBERMENS MUTUAL CASUALTY COMPANY, a Corporation, Plaintiff-Appellee,
v.
LOUISVILLE TITLE INSURANCE COMPANY, Inc., a Corporation, Cherokee Gardens, Inc., a Corporation, Rosemont Gardens, Inc., a Corporation, et al., Defendants-Appellants.
 No. 27189.
 United States Court of Appeals Fifth Circuit.
 July 15, 1969.
 
 Jack H. Harrison, Birmingham, Ala., for Louisville Title Ins. Co., Inc.
 Ollie L. Blan, Jr., Birmingham, Ala., for Walter M. and Ann French Graham.
 Joseph S. Bluestein, Birmingham, Ala., for Rosemont Gardens, Inc. and Cherokee Gardens, Inc., Sirote, Permutt, Friend & Friedman, Beavers, Shannon & Harrison, Spain, Gillon, Riley, Tate & Ansley, Birmingham, Ala., of counsel, for appellants.
 Thomas R. Elliott, Jr., James E. Clark, of London, Yancey, Clark & Allen, Birmingham, Ala., for Lumbermens Mut. Cas. Co., a Corp.
 James W. May, Birmingham, Ala., Corretti, Newsom, Rogers & May, Birmingham, Ala., for Birmingham Bd. of Realtors, Inc., amicus curiae.
 Before BELL and GOLDBERG, Circuit Judges, and ATKINS, District Judge.
 BELL, Circuit Judge:
 
 
 1
 The issue here is whether plaintiff's liability under the real estate salesman's bond issued by it on October 1, 1964, pursuant to the provisions of Title 46, § 311(5), Code of Alabama as amended, is a single penalty bond, or whether it is subject to several recoveries in the penal amounts of $1,000.00 each. The bond covers Frank S. Lacey, Jr., a real estate salesman. The district court concluded that it was a single penalty bond. We affirm.
 
 
 2
 The proceedings began as a bill for interpleader. 28 U.S.C.A. §§ 1335, 2361. At the time of the district court's consideration, defendant Louisville Title Insurance Company had recovered four judgments against Lacey in the amount of $1,000.00 each. The defendants, Cherokee Gardens, Inc., and Rosemont Gardens, Inc., had suits pending in the amounts of $1,000.00 each. Defendants Walter M. Graham and Ann French Graham had procured a judgment against Lacey, and were seeking a recovery of $1,000.00. The defendants asserted their judgments or claims by way of counterclaims in the interpleader action.
 
 
 3
 The Alabama statute in question, Title 46, § 311(5) (d), provides in pertinent part:
 
 
 4
 "Every applicant for real estate salesman's license, either original or renewal, shall furnish bond payable to the state of Alabama, in the amount of one thousand dollars ($1,000.00) with a surety company authorized to do business in Alabama, which bond shall provide that the obligor therein will pay to the extent of one thousand dollars ($1,000.00) any judgment which may be recovered against such licensee for loss or damages arising from his activities as such real estate salesman. A new bond or a renewal or continuation of the original bond shall be required for each yearly licensing period."
 
 
 5
 The bond, issued pursuant to and with express reference therein to the statute, provides in pertinent part:
 
 
 6
 "* * * if the said Principal [Lacey] shall pay to the extent of ($1,000.00) One Thousand and No/100 Dollars, any judgment which may be recovered against him for loss or damages arising from his activities as such real estate Salesman, as defined in said Act and during the term of this bond, then this obligation shall be null and void, otherwise to remain in full force and effect. * * *"
 
 
 7
 It is agreed that there is no Alabama appellate court decision on the question presented. It is also agreed that there is no legislative history available. Our Erie[1] duty is to fathom what the Alabama Supreme Court would decide if the case was before that tribunal.
 
 
 8
 Appellants-Defendants rely on the literal language of the statute to the extent of asserting that "any judgment" contemplates more than one judgment and thus that the statute and the bond make it necessary to pay multiples of the sum of $1,000.00 depending on the number of judgments. They offer for support the case of Paulsell v. Peters, S.Ct. Wash., 1941, 9 Wash.2d 599, 115 P.2d 708. In that case the statute required real estate brokers to post a bond guaranteeing the faithful accounting of a trust fund committed to such broker. Rem.Rev.Stat. § 8340-10. 115 P.2d at 709. The statute also provided that:
 
 
 9
 "Any person who may be damaged by the wrongful conversion of trust funds by such real estate broker, shall, in addition to other legal remedies, have a right of action in his own name on such bond for all damages not exceeding one thousand dollars ($1,000)." Rem.Rev.Stat. § 8340-11. 115 P.2d at 709.
 
 
 10
 Appellants also offer in support of their position the fact that other Alabama statutes expressly limit bonds to a single penalty where that is intended. See, for example, Title 15, § 201, Code of Alabama, 1940, Recompiled 1958, 1967 Cumulative Pocket Part, (bail bondsmen); Title 53, § 29(c), Code of Alabama, 1940, Recompiled 1958, 1967 Cumulative Pocket Part, (securities dealers).
 
 
 11
 Lumbermen's, on the other hand, argues that the judgment of the district court is supported by the Oklahoma decision in Western Surety Company v. Childers, Sup.Ct., 1962, 372 P.2d 214, a case nearly identical on its facts. The real estate statute in Oklahoma contained the same bond requirement language as the Alabama statute and the court concluded that a bond issued under that statute and in terms similar to the bond here, constituted a single penalty bond rather than a multiple payment or an open-end bond.
 
 
 12
 We are inclined to agree with the reasoning of the majority in the Oklahoma decision, 372 P.2d at 217, supra, where it was pointed out that the legislative intent should not rest entirely on the grammatical construction of any one word if that construction would lead to an unreasonable result. The court concluded that a multiple payment construction under the terms of the statute and the bond would be unreasonable in that no surety could properly be expected to undertake such an indefinite and unlimited responsibility. Therefore, it was stated, that an open-end or multiple payment construction might defeat the purpose of the legislation which was to offer some protection to the public in the real estate field. It might be added that such a construction would possibly make it difficult if not impossible in some instances for real estate salesmen to obtain bonds, and thus to engage in that occupation. These views tend to support the district court's construction of the statute. See also Miles v. Fidelity and Casualty Co. of New York, La.Ct. App., 1966, 185 So.2d 613; Wiggins v. Pacific Indemnity Company, Cal.Ct.App., 1933, 134 Cal.App. 328, 25 P.2d 898.
 
 
 13
 In short, while the question is admittedly close, we can not hold that the district court erred.
 
 
 14
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Erie Railroad Company v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 1189